IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00786-PAB-MLC

WEBBANK,

    Plaintiff,

v.

JULIE ANN MEADE, in her official capacity as Administrator of the Uniform Consumer Credit Code for the State of Colorado,

    Defendant.
_____

# ORDER
_____

This matter comes before the Court on Defendant's 12(b)(1) and (6) Motion to Dismiss WebBank's Complaint [Dkt. #1] [Docket No. 17].

## I. BACKGROUND

This case is related to a separate action captioned *Meade v. Avant of Colorado, LLC*, No. 17-cv-0620-WJM-STV ("*Avant*" or the "enforcement action"). In the enforcement action, the defendant here, Julie Ann Meade (the "Administrator"), seeks to enforce Colorado's statutory limits on finance and delinquency charges in her role as the Administrator of the Colorado Uniform Consumer Credit Code. *Avant*, 2018 WL 1101672, at *1 (D. Colo. Mar. 1, 2018). The defendant in the enforcement action, Avant of Colorado, LLC ("Avant"), is a "servicing partner" that purchases WebBank-originated loans. Docket No. 1 at 2, ¶¶ 3, 5. WebBank is not a party to the enforcement action. *Avant*, 2018 WL 1101672, at *1; Docket No. 1 at 2, ¶ 5. On March 9, 2017, Avant removed the enforcement action to federal court in this district. *Avant*,

2018 WL 1101672, at *1.

On March 28, 2017, WebBank filed its complaint in this lawsuit. Docket No. 1. WebBank alleges that the enforcement action "directly interferes with WebBank's core lending power and is foreclosed by federal law." *Id*. at 1, ¶ 1. WebBank claims that, as a "federally regulated bank, federally insured by the Federal Deposit Insurance Corporation ("FDIC"), . . . WebBank lends to borrowers on a uniform, nationwide basis, using the authority provided by Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d." Docket No. 1 at 1, ¶ 2. WebBank seeks a declaratory judgment that Colo. Rev. Stat. §§ 5-1-201(8), 5-2-201, and 5-2-203 (collectively "Colorado usury laws") are "expressly preempted by Section 27 of the Federal Deposit Insurance Act as to loans originated by WebBank." Docket No. 1 at 31, ¶ 93. WebBank further seeks a permanent injunction against the Administrator to prevent her from enforcing Colorado usury laws against "WebBank, any loans originated by WebBank, or any assignee, partner, program, and/or servicer with respect to their involvement with any loans originated by WebBank." *Id*. at 31-32, ¶ 94.

On March 31, 2017, the Administrator filed a motion to remand the enforcement action. *Avant*, 2018 WL 1101672, at *1. On April 25, 2017, the Administrator filed the current motion to dismiss this case. Docket No. 17. The Administrator argues that WebBank lacks standing because it alleges only attenuated injury and that WebBank fails to state a claim because Colorado usury laws are not preempted when applied to non-bank entities. *Id.* at 4-11. The Administrator also argues that, in the event the enforcement action is remanded to state court, the Court must abstain from hearing WebBank's claim pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), or, in the

alternative, that the Court should decline to exercise jurisdiction to issue a declaratory judgment. Docket No. 17 at 12-15.

On March 1, 2018, Judge William J. Martínez granted the Administrator's motion to remand the enforcement action to state court. *Avant*, 2018 WL 1101672, at *15.

## II. ANALYSIS

The Court addresses only the issue of *Younger* abstention because it is dispositive.

In *Younger*, the Supreme Court ruled that a district court's injunction of a pending state court criminal prosecution violated "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41. *Younger* abstention dictates "that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). Thus, after *Younger*, even when a federal court would otherwise have jurisdiction to grant declaratory or equitable relief, the court must abstain from exercising jurisdiction when a judgment on the claim would interfere with ongoing state criminal or civil proceedings. *D.L. v. Unified Sch. Dist.*, 392 F.3d 1223, 1227-28 (10th Cir. 2004); *see also Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("[W]here an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well."). The Supreme Court has established a threefold analysis for abstention under *Younger*. "For *Younger*

abstention to apply, there must be an ongoing state judicial . . . proceeding, the presence of an important state interest, and an adequate opportunity to raise federal claims in the state proceedings." *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1221 (10th Cir. 2018) (alteration marks and internal quotation marks omitted); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32 (1982); *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)*; Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003). *Younger* abstention is mandatory, and a district court does not have discretion whether to abstain unless extraordinary circumstances are present. *Weitzel v. Div. of Occupational and Prof'l Licensing of Dep't of Commerce*, 240 F.3d 871, 875 (10th Cir. 2001) (citing *Amanatullah*, 187 F.3d at 1163).

As to the first prong of the *Younger* analysis, the enforcement action is pending in state court. *See Avant*, 2018 WL 1101672, at *15. As to the second prong, enforcing laws regulating lending practices implicates an important state interest. *See Epes v. Green Tree Servicing, LLC*, 2004 WL 5571941, at *10 (E.D. Va. Dec. 14, 2004) ("[T]he state has an important interest in protecting citizens from predatory lending practices and usury." (citations omitted)). The relief WebBank seeks – an order enjoining the Administrator from enforcing Colorado usury laws against anyone involved with its loans – would have a significant effect on the State's ability to regulate lending. *See* Docket No. 17 at 13-14; Colo. Rev. Stat. §§ 5-6-114 (empowering the Administrator to enforce Colorado's usury laws by civil action). As to the third prong, WebBank does not argue or allege any facts showing that Avant would be unable to

4

raise preemption challenges in relation to the WebBank-initiated loans that it owns, and the Court finds no basis for so concluding. *Cf. Stoorman v. Greenwood Trust Co.*, 908 P.2d 133 (Colo. 1995) (finding that federal law preempts Colorado's limitations on loan fees and interest charges by a federally-insured, state-chartered bank).

WebBank presents three arguments that abstention is nevertheless inappropriate here: (1) WebBank is not a party to the enforcement action and is not an alter ego of Avant, (2) the *Younger* abstention doctrine was narrowed by *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), such that it does not apply to the enforcement action, and (3) preemption under Section 27 of the FDIA is "facially conclusive" such that no state interest would be served by allowing the state court to act. Docket No. 23 at 14.[1] The Court addresses these arguments in turn.

### A. WebBank is Not a Stranger to the Enforcement Action

WebBank argues that abstention is inappropriate because "WebBank is not a party to the Enforcement Action, and WebBank cannot be characterized as 'merely an alter ego of a party in state court,' i.e., Avant." Docket No. 23 at 14 (quoting *D.L.*, 392 F.3d at 1230). This argument is not persuasive. In *D.L.*, a school district brought a state court action for special education expenses against the mother and cohabiting boyfriend of two disabled students. *D.L.*, 392 F.3d at 1227. The mother, boyfriend, and the students filed a complaint in federal court against the district and its special education administrator. *Id.* Even though the two lawsuits had different

---

[1] WebBank also argues that *Younger* abstention would be premature because the enforcement action had not been remanded when its brief was filed. Docket No. 23 at 14.

5

parties, the court found that *Younger* barred the federal court from hearing claims related to the special education expenses because, if any federal claim succeeded, there would be no merit to the district's state court suit. *Id*. at 1229. Because a "resolution favorable to Plaintiffs in [the federal] case would foreclose [the state] suit (and might even be enforced by a federal injunction against the suit)," the federal case presented an "interference with state-court litigation that [was] impermissible under *Younger*." *Id*. (citing *Samuels*, 401 U.S. at 72-73). Discussing the Supreme Court's decision in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975), the Tenth Circuit explained that it is "proper for a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court—for example, both proceedings may involve challenges to the same ordinance as an unconstitutional restraint on expressive activity." *D.L.*, 392 F.3d at 1230. The court, however, found that *Younger* applied where there was "in essence only one claim at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court." *Id*. The Court therefore held *Younger* required abstention for the claims brought by and against individuals who were not a party to the state suit "because of the close connection of [the federal] claims to the[] claims in state court" and the close connection of the federal parties to the state parties. *Id*. at 1231.

Although not a party to the enforcement action, WebBank seeks to directly interfere with an ongoing state court proceeding. *See Doran*, 422 U.S. at 929-30 (holding *Younger* barred injunctive relief against an ongoing prosecution but did not bar

6

injunctive relief against future prosecutions). Further, while WebBank is a distinct entity from Avant, WebBank has a close business relationship with Avant and has not shown that it is a genuine stranger that has "its own distinct claim to pursue." *D.L.*, 392 F.3d at 1230; *see also Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002) (holding that *Younger* applies to a subsidiary's federal lawsuit seeking to obstruct enforcement of a state court remedy against the parent corporation). WebBank's and Avant's mutual interests go beyond merely opposing the same policy; WebBank's federal claims seek to vindicate the same conduct that is at issue in the enforcement action. *See Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975) (holding *Younger* abstention was required where the federal plaintiff "had a substantial stake in the state proceedings" against its employees, "so much so that they sought federal relief, demanding that the state statute be declared void" due to the intertwined interests). Therefore, the Court finds that abstention is appropriate even though WebBank is not a party to the enforcement action.

### B. Civil Enforcement Actions are Subject to *Younger* Abstention

WebBank argues that "abstention would be inappropriate also because the Administrator's state court civil proceeding against Avant is not the sort of 'quasi-criminal' action that can support abstention as that doctrine has been clarified and narrowed by *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013)." Docket No. 23 at 14. In *Sprint Commc'ns*, the Supreme Court reaffirmed that *Younger* abstention applied to "certain 'civil enforcement proceedings.'" 134 S. Ct. at 591 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)

7

("*NOPSI*") (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975))). Although *Sprint Commc'ns* added the word "certain" as a qualifier to the phrase "civil enforcement proceedings," *id.*, it did not indicate that *Younger* abstention is inappropriate in those situations where the Supreme Court has previously found abstention was required, namely, to prevent "interference by a federal court with an ongoing civil enforcement action such as this, brought by the State in its sovereign capacity." *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *see also Moore v. Sims*, 442 U.S. 415, 423 (1979). Rather, *Sprint Commc'ns* reaffirmed that "*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*," which included civil enforcement proceedings such as an enforcement action. 134 S. Ct. at 594; *see also Planned Parenthood of Kansas*, 2018 WL 991502, at *11 ("[C]ivil enforcement proceedings merit abstention under *Younger*." (citing *Sprint Commc'ns*, 134 S. Ct. at 588)). The Court finds that an enforcement action is the type of proceeding to which *Younger* applies.

### C. Preemption is not Facially Conclusive

Finally, WebBank argues that "abstention would be improper because preemption under Section 27 is 'facially conclusive.'" Docket No. 23 at 14 (quoting *NOPSI*, 491 U.S. at 367). Neither the Supreme Court nor the Tenth Circuit has adopted a rule that abstention is inappropriate where the federal preemption analysis is facially conclusive. In *NOPSI*, the Supreme Court declined to reach the issue of whether such a rule is appropriate because it found that the "further factual inquiry" required to make the abstention determination in that case prevented the analysis from being facially conclusive. *See NOPSI*, 491 U.S. at 367. Another court in this district

8

has discussed such an exception, but it found that the plaintiffs could not "meet the high standard that the Tenth Circuit would likely utilize if it were to recognize the 'facially conclusive' preemption exception to *Younger*" because there were recognized exceptions to the preemptive scope of the statutory provision at issue. *See Eagle Air Med Corp. v. Colorado Bd. of Health*, 570 F. Supp. 2d 1289, 1292 (D. Colo. 2008); *see also Mountain Sols., Inc. v. State Corp. Comm'n of State of Kan.*, 966 F. Supp. 1043, 1049 (D. Kan. 1997) (finding it was facially conclusive that preemption did not apply and declining to abstain), *aff'd sub nom. Sprint Spectrum, L.P. v. State Corp. Comm'n of State of Kan.*, 149 F.3d 1058 (10th Cir. 1998). Courts have come to various conclusions about the existence and scope of preemption under Section 27. *Compare Madden v. Midland Funding, LLC*, 786 F.3d 246, 250-51 (2d Cir. 2015), *and Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191, 1195 (N.D. Okla. 2004), *with In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 295 (3d Cir. 2005), *and Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1368 (D. Utah 2014). It is not facially conclusive that preemption under Section 27 applies with the broad sweep that WebBank claims, namely, that it applies even to claims against non-bank entities such as Avant. Further, preemption under of Section 27 in such circumstances has been found to turn on factual issues of the same type that the Supreme Court found barred preemption from being facially conclusive. *See, e.g.*, *Flowers*, 307 F. Supp. 2d at 1206 (analyzing factual allegations to determine whether they showed a non-bank entity was the true lender). Accordingly, the Court will not reach the issue of whether a facially conclusive exception to *Younger* exists because, even if it did exist, WebBank has not shown that

it would apply in these circumstances.  The Court finds that *Younger* abstention is appropriate and, accordingly, will dismiss this case for want of jurisdiction.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's 12(b)(1) and (6) Motion to Dismiss WebBank's Complaint [Dkt. #1] [Docket No. 17] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims are dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have her costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED March 19, 2018.

                              BY THE COURT:

                              s/Philip A. Brimmer
                              PHILIP A. BRIMMER
                              United States District Judge